IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

MATCH-E-BE-NASH-SHE-WISH BAND
OF POTTAWATOMI INDIANS,
a federally recognized Indian Tribe, )

           Plaintiff, )

vs.

KEAN-ARGOVITZ RESORTS, )
a Delaware corporation, and )
KEAN ARGOVITZ RESORTS- )
MICHIGAN, LLC, )
a Delaware Limited Liability Company,

           Defendants. )

CASE NO. 1:02-CV-194

**AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

---

COMES NOW the Plaintiff, the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (the "Tribe"), which states and alleges as follows:

### PARTIES

1    Plaintiff Match-E-Be-Nash-She-Wish Band Of Pottawatomi Indians is a federally recognized Indian Tribe whose tribal homelands and current tribal headquarters are located in this judicial district. See 63 Fed. Reg. 56936 (Oct. 23, 1998).

2.    Defendant, Kean-Argovitz Resorts, Inc. is a Delaware corporation that has transacted business with the Tribe in this judicial district. Defendant, Kean Argovitz Resorts-Michigan, LLC, is a Delaware Limited Liability Company that has transacted business with the Tribe in this judicial district. The Defendants are together referred to as "KAR" throughout this Complaint.

## JURISDICTION

3. Jurisdiction in this Court is predicated upon 28 U.S.C. § 1331, in that it concerns questions of law arising under the laws of the United States of America, namely the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701, *et seq.*, and the regulations promulgated pursuant thereto, 25 C.F.R. Part 501, *et seq.* Jurisdiction is also predicated upon 28 U.S.C. § 1362, because this in an action brought by an Indian Tribe wherein the matter in controversy arises under the laws of the United States.

## VENUE

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims described herein arose in this District.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5. In October, 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA") codified at 25 U.S.C. § 2701, *et seq.* The express purpose of the IGRA is to (1) provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments; (2) provide a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to insure that the Indian tribe its the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players; and (3) to establish a federal regulatory authority for gaming on Indian lands, establish federal standards for gaming on Indian lands, and to establish the National Indian Gaming Commission (the "NIGC")

6. The IGRA divides gaming into three classes. Class gaming is defined as social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as a part of or in connection with tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class I gaming on Indian lands is within the exclusive jurisdiction of Indian tribes and is not subject to state or federal regulation.

7. Class II gaming is defined as games of chance commonly known as bingo and games similar to bingo. 25 U.S.C. § 2703(7). Class II gaming on Indian lands is subject to tribal regulation with oversight by the NIGC. 25 U.S.C. § 2710.

8. Class III gaming is defined as all forms of gaming that are not Class I or Class II gaming. 25 U.S.C. § 2703(8). Class III is permitted on Indians lands only when authorized by a tribal ordinance or resolution approved by the Chairman of the NIGC and conducted in conformance with a tribal-state compact. 25 U.S.C. § 2701(d)(1).

9. The IGRA provides that a tribe may enter into a management contract for the operation and management of Class II and Class III gaming activities, but such contract, in order to be valid, must be approved by the Chairman of the National Indian Gaming Commission ("NIGC"). 25 U.S.C. §§ 2710(d)(9), 2711; 25 C.F.R. § 533.7.

10. For purposes of IGRA, the term "management contract" "means any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 U.S.C. § 502.15.

11. For purposes of IGRA, the term 'collateral agreement," "means any contract, whether or not in writing, that is related, either directly or indirectly, to a management contract, or to any rights, duties or obligations created between a tribe (or any of its members, entities or

Gun-Kean Amended Complaint for
Declaratory and Injunctive Relief

3

organizations) and a management contractor or subcontractor (or any person or entity related to a management contractor or subcontractor)." 25 U.S.C. § 502.5.

12. Without admitting the validity of any agreement, on November 12, 1998, the Tribe and Defendants signed a document entitled, "Management Agreement between the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians and Kean-Argovitz Resorts, Inc." (the "Management Agreement"). A true and correct copy of the Management Agreement is attached hereto as Exhibit A.

13. Without admitting the validity of any agreement, on or about November 12, 1998 the Tribe and Defendants signed a Development Agreement for the development of a gaming facility to operate Class II and Class III gaming pursuant to the IGRA. A true and correct copy of said Development Agreement is attached hereto as Exhibit B.

14. The Management Agreement between the Tribe and KAR is a "management contract" within the definition of IGRA (25 C.F.R. § 502.15) and is subject to the approval provisions of the Chairman of the NIGC pursuant to 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7

15. The Chairman of the NIGC has not approved the Management Agreement.

16. The Development Agreement constitutes a "collateral agreement" pursuant to 25 C.F.R. § 502.5, and/or a "management contract" pursuant to 25 C.F.R. § 502.15, and 25 C.F.R. 533.7.

17. The Development Agreement has not been approved by the Chairman of the NIGC pursuant to 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7.

18. On or about January 1, 1999, the Tribe and KAR ceased to conduct any activity under either the Management Agreement or the Development Agreement.

19. On January 21, 2001, KAR filed a Demand for Arbitration with the American Arbitration Association, seeking to arbitrate alleged breaches by the Tribe of the Management Agreement and Development Agreement, and demanding specific performance or damages "in excess of $400,000,000." A true and correct copy of the arbitration demand is attached thereto as Exhibit C. No proceedings have been scheduled before the American Arbitration Association.

## FIRST CLAIM FOR RELIEF

20. The Tribe incorporates paragraphs 1 through 19 stated herein by this reference.

21 The Management Agreement between the Tribe and KAR has not been approved by the Chairman of NIGC, and as such, it is void in its entirety, pursuant to 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7.

Because the Management Agreement is void, the Tribe's limited waiver of sovereign immunity contained in the Agreement is also void.

Because the Management Agreement is void as a matter of federal law, the arbitration provision of such Agreement is also void, and KAR has no right to proceed with its arbitration claims against the Tribe.

24. If the arbitration proceedings are not enjoined, the Tribe will be subject to immediate and irreparable injury, loss and damage, because: the governmental and sovereign powers of the Tribe will be compromised in that the Tribe will be forced to arbitrate claims without a valid waiver of tribal sovereign immunity and pursuant to an agreement which is void under the IGRA, thereby eviscerating the purpose and intent of IGRA.

## SECOND CLAIM FOR RELIEF

25 The Tribe incorporates paragraphs 1 through 24 stated herein by this reference

26. The Development Agreement between the Tribe and KAR has not been approved by the Chairman of NIGC, and as such, it is void in its entirety, pursuant to 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7.

27. Because the Development Agreement is void, the Tribe's limited waiver of sovereign immunity contained in the Agreement is also void.

28. Because the Development Agreement is void as a matter of federal law, the arbitration provision of such Agreement is also void, and KAR has no right to proceed with its arbitration claims against the Tribe.

29. If the arbitration proceedings are not enjoined, the Tribe will be subject to immediate and irreparable injury, loss and damage, because: the governmental and sovereign powers of the Tribe will be compromised in that the Tribe will be forced to arbitrate claims pursuant to an agreement which is void under the IGRA, thereby eviscerating the purpose and intent of IGRA.

WHEREFORE, the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians respectfully demands that this Court enter an order as follows:

1   With regard to the Tribe's First Claim for Relief, and Order:

   (a)   declaring the Management Agreement void pursuant to IGRA, 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7;
   (b)   issuing a temporary restraining order, preliminary injunction and permanent injunction restraining KAR, its agents, servants, employees and attorneys, from prosecuting or enforcing or attempting to prosecute or enforce the arbitration provisions of the Management Agreement between KAR and the Tribe, or from taking any other action in furtherance of arbitration proceedings heretofore initiated by KAR against the Tribe;
   (c)   awarding the Tribe costs incurred in this action, including attorney fees; and,
   (d)   awarding such other and further relief as this Court deems just and proper.

2.  With regard to the Tribe's Second Claim for Relief, and Order:

(a) declaring the Development Agreement void under IGRA, 25 U.S.C. §§ 2710(d)(9), 2711, and 25 C.F.R. § 533.7;

(b) issuing a temporary restraining order, preliminary injunction and permanent injunction restraining KAR, its agents, servants, employees and attorneys, from prosecuting or enforcing or attempting to prosecute or enforce the arbitration provisions of the Development Agreement between KAR and the Tribe, or from taking any other action in furtherance of arbitration proceedings heretofore initiated by KAR against the Tribe;

(c) awarding the Tribe costs incurred in this action, including attorney fees; and,

(d) awarding such other and further relief as this Court deems just and proper.

DATED this 8 day of July, 2002.

                        MATCH-E-BE-NASH-SHE-WISH BAND OF POTTAWATOMI INDIANS,
a federally recognized Indian Tribe,
Plaintiff,

By _____
Conly J. Schulte NE # 20158
MONTEAU & PEEBLES, LLP
12100 West Center Road, Suite 202
Omaha, Nebraska 68144-3960
Telephone No. (402) 333-4053